# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

MICHAEL SHAUN JONES,

        Plaintiff,

v.                                            CIVIL ACTION NO.   2:15-cv-13239

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Michael Jones' ("Claimant") Complaint seeking review of the decision of then Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner").[1] (ECF No. 2.)   By Standing Order entered May 7, 2014, and filed in this case on August 18, 2015, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings and a recommendation ("PF&R").   (ECF No. 4.)   Magistrate Judge Eifert filed her PF&R on October 6, 2016, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket.   (*See* ECF No. 16.)

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   Failure to file

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing the former Social Security Commissioner, Carolyn W. Colvin, the original Defendant in this case.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Berryhill is automatically substituted as the Defendant.

1

timely objections constitutes a waiver of de novo review and Claimant's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1). *See also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir. 1982). Objections to the PF&R were originally due on October 24, 2016, and Claimant filed a timely objection to the PF&R on that day. (ECF No. 17.)

Claimant makes a single objection in his filing. He claims that Magistrate Judge Eifert "erred finding that the ALJ's inadequate step three analysis was cured by other parts of his decision and that, therefore, his decision was supported by substantial evidence." (*Id.* at 2.) Claimant argues that the ALJ in this case did not engage in an adequate discussion to support a finding at step three of his analysis that Claimant did not meet the criteria of Listing 14.09. (*See id.* at 4.) He avers that the ALJ's decision does not comport with the requirements set out by the Fourth Circuit in both *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), and *Fox v. Colvin*, 632 Fed. App'x 750 (4th Cir. 2015). While Magistrate Judge Eifert found that the ALJ's error at this step of the analysis was harmless, (*see* ECF No. 16 at 39–40), Claimant argues that the ALJ cannot rely on his step two and residual functional capacity ("RFC") findings to substitute or compensate for an insufficient step three finding. (*See* ECF No. 17 at 4–5.)

An ALJ's explanation for a particular finding in step three of a social security disability analysis need not necessarily be located within the step three discussion. As long as the ALJ properly considers all the relevant evidence taken into consideration in making a step three finding

2

at some point in the opinion, then his or her conclusion on that step will be upheld. *See McCartney v. Apfel*, 28 Fed. App'x 277, 279 (4th Cir. 2002). The ALJ in *Radford* "found that Radford had two severe impairments . . . but that neither qualified as an impairment" under various listings. *See* 734 F.3d at 291. The Fourth Circuit did not accept that finding because "[t]he ALJ provided no basis for his conclusion, except to say that he had 'considered, in particular,' the listings above, and had noted that state medical examiners had also 'concluded after reviewing the evidence that no listing [was] met or equaled.'" *Id.* at 292, 294 ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.") (citation omitted). The court noted that the citations of medical opinions "is not enough to constitute 'substantial evidence.'"[2] *See id.* at 295. The plaintiff's medical record in *Radford* included a "fair amount of evidence supportive of his claim," so the court noted that a full explanation was particularly important. *See id.* Beyond requiring the ALJ to strengthen his legal analysis by evaluating more substantial evidence, the court did not explicitly require this discussion to occur within step three. *See id.* at 294–95 ("[T]he district court should have vacated and remanded with instructions for the ALJ to clarify why Radford did not satisfy Listing 1.04A.").

Similarly, the Fourth Circuit in *Fox* found that "the ALJ did not apply findings to the disability listing . . . As in *Radford* . . . the ALJ's analysis was likewise perfunctory and offered nothing to reveal *why* he was making his decision." 632 Fed. App'x at 755 (emphasis in original). The ALJ listed the severe limitations suffered by the plaintiff, but he did not explain why he chose

---

[2] For the purposes of reviewing an ALJ's decision in a social security case, "[s]ubstantial evidence is more than a scintilla of evidence but may be somewhat less than a preponderance." *Bell v. Colvin*, No. 7:13–CV–46–D, 2014 WL 869284, at *1 (E.D.N.C. Mar. 5, 2014) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).

to discredit the various diagnoses and find instead that the plaintiff only had "mild to moderate limitations in his legs." *Id.* "Because the ALJ's opinion fail[ed] to provide any explanation connecting his determination to that of Appellant's failure to meet the listing impairment, the ALJ's analysis was insufficient." *Id.* (citing *Smith v. Heckler*, 782 F.2d 1176, 1181 (4th Cir. 1986) (explaining that the ALJ needs to filter through the evidence and explain "why" the ALJ made the decision); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam) (stating that an ALJ has a "duty of explanation" of what informed his decision)) (citation omitted). The court did not explicitly provide that the discussion must take place within the step three discussion in the analysis. Like in *Radford*, the ALJ in *Fox* did not explain anywhere in his analysis why the plaintiff's limitations did not meet the appropriate listing despite a dense record of medical history. *See id.* at 755–56. The court did not preclude the possibility that an explanation of the available evidence in support of the step three finding may be contained elsewhere in the analysis, such as in the step two discussion or RFC determination.

The Fourth Circuit has confirmed in other opinions that the substantial evidence supporting a step three finding may be examined in detail elsewhere in the ALJ's analysis. *See McCartney*, 28 Fed. App'x at 279 (describing as "unsubstantiated" the plaintiff's claim that "the ALJ *must* have analyzed the medical evidence at step three" (emphasis added)). The *McCartney* Court agreed with the district court that "the ALJ need only review medical evidence once in his decision." *See id.* The plaintiff tried to characterize the ALJ's decision as procedurally inadequate because the discussion of substantial evidence did not occur at step three, but the court noted that the "sufficient evidence to support the ALJ's determination that McCartney did not meet Listing 12.06" was located in step four, and this did not make the finding any less valid. *See id.*

4

at 279–80.  Other district courts within the Fourth Circuit also have found that "[a] discussion of the relevant evidence elsewhere in the ALJ's opinion may demonstrate that, regardless of an imprecise discussion at step three, the ALJ fully and properly considered all the relevant evidence in his step three analysis."  *See Robinson v. Colvin*, No. 7:12CV272, 2014 WL 1276507, at *4 (W.D. Va. Mar. 27, 2014); *see also Dunford v. Astrue*, No. BPG–10–0124, 2012 WL 380057, at *3 (D. Md. Feb. 3, 2012) ("A remand is not warranted, however, 'where it is clear from the record which listing . . . [was] considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion." (quoting *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002))).  Thus, to warrant a remand back to the Commissioner, a plaintiff has to show that the ALJ fails to explain anywhere in his or her decision the medical evidence that sufficiently supports an appropriate finding at step three.

    Here, the ALJ analyzed whether Claimant's psoriatic arthritis met the criteria for inflammatory arthritis set out in Listing 14.09.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09.  (*See also* ECF No. 9-5 at 19.)  Claimant only objects to Magistrate Judge Eifert's finding that the ALJ's step three finding was supported by substantial evidence.  (*See* ECF No. 17 at 2.)  He does not claim that the ALJ analyzed his impairments under the wrong listing—only that the ALJ's finding that Claimant's impairment did not meet Listing 14.09 (Inflammatory Arthritis) was insufficiently supported.  (*See id.*)

    The ALJ appropriately set out the criteria Claimant must meet to satisfy the requirements of inflammatory arthritis.  (*See* ECF No. 9-5 at 19.)  The ALJ noted that Listing 14.09

5

(Inflammatory Arthritis) requires evidence of the following:

> [P]ersistent inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively; at least moderate involvement of two or more organs/body systems and at least two constitutional signs or symptoms (e.g., fatigue, fever, malaise, weight loss); ankylosing spondylitis or other spondyloarthropathy with fixation of the spine shown by medically acceptable imaging; or repeated manifestations of inflammatory arthritis with at least two documented constitutional symptoms and signs, and limitation in activities of daily living, social functioning, and completing tasks in a timely manner.

(*Id.*) The ALJ concluded that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of [Listing 14.09]." (*Id.*) It is this Court's task to review the ALJ's explanation to ensure it supports his finding without "reweigh[ing] conflicting evidence, mak[ing] credibility determinations, or substitut[ing] our judgment for that of the [ALJ] . . . ." *See Radford*, 734 F.3d at 296 (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). The ALJ failed to elaborate within his step three discussion "what particular evidence he considered and what information he found persuasive in reaching his conclusion that Claimant did not meet or equal Listing 14.09." (ECF No. 16 at 37.) However, the ALJ's decision still discusses, albeit not in step three, evidence that supports his conclusion, which allows this Court to undertake a "meaningful review" of the step three finding. *See Radford*, 734 F.3d at 296 (citing *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)).

Step two of the ALJ's analysis finds that several impairments from which Claimant suffered were not severe. (*See* ECF No. 9-5 at 16–19.) For example, diagnoses of mild tremor, hypertension, hyperlipidemia, elevated liver enzymes, fibrotic fatty tissue, and degenerative disc disease, were "non-severe, . . . were responsive to medication, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations."

6

(*See id.* at 17 (citations omitted).) Additionally, the ALJ notes that Claimant's obesity had no "definite or measureable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." (*Id.*) The ALJ found that Claimant was able to "perform personal care independently" and assisted with childcare. (*Id.* at 18.) Lastly, Claimant did not have any symptoms suggesting lupus, and he had no mental impairments requiring a limitation finding more severe than "mild." (*See id.* at 17–18.)

In the RFC determination, the ALJ discussed the medical record as it relates to Claimant's alleged psoriatic arthritis, noting that "a magnetic resonance imaging (MRI) of the knee was unremarkable and examination revealed full range of motion . . . Complaints of knee pain resulted in no significant limitations . . . no obvious swelling or effusion [of the knees] . . . ranges of motion were full. Bilateral knee and lumbar spine x-rays were normal. Rheumatoid factor was negative." (*Id.* at 20 (citations omitted).) The ALJ further stated that a July 31, 2012, examination "noted range of motion in the shoulders, elbows, wrists, and knees was normal and strength was 5/5 in the upper extremities," and that a March 14, 2013, examination "showed his extremities without swelling, normal power and tone in all four extremities, and stable gait." (*Id.* at 20–21 ("The claimant had no problems extending, making a fist, or opposing his fingers, and grip strength with fine manipulation was normal. Hips and ankles were normal. In March 2013, rheumatologist, Thomas Howard, M.D., also noted minimal arthritic findings with normal strength, sensation, and reflexes." (internal citations omitted)).) The ALJ continued to discuss additional examination and treatment notes in the medical record, one of which showed a "full range of motion on all extremities." (*See id.* at 21 (citations omitted).) Further, the fact that no treating doctor placed restrictions on his activities was persuasive to the ALJ. (*See id.* ("[A]

7

review of the record in this case reveals he was advised to exercise on a regular basis.") (citation omitted).)

Based on the ALJ's discussion in his decision, substantial evidence exists to find that Claimant did not meet the requirements of Listing 14.09 (Inflammatory Arthritis). Claimant maintains the burden of demonstrating that his impairments "meet or medically equal a listed impairment." *See Odoms v. Colvin*, No. 1:15-cv-00252-MOC, 2016 WL 3679293, at *4 (W.D.N.C. July 11, 2016) (citing *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). This burden requires Claimant to "present medical findings equal in severity to *all* the criteria for that listing . . . ." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990)) (emphasis added). Magistrate Judge Eifert correctly sets out in her PF&R what Claimant must show to support a finding of inflammatory arthritis:

> In order to meet or equal Listing 14.09, Claimant must have inflammatory arthritis, as documented in section 14.00B6, along with one of four additional sets of severity criteria, including:
>
> A. Persistent inflammation or persistent deformity of:
>
> 1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
>
> 2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).
>
> or
>
> B. Inflammation or deformity in one or more major peripheral joints with:
>
> 1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
>
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

8

or

C. Ankylosing spondylitis or other spondyloarthropathies, with:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

or

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

(ECF No. 16 at 40–41 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09).) Again, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specific medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (emphasis in original).

First, Claimant was unable to show persistent[3] inflammation or deformity in two or more

---

[3] "Persistent means that a sign(s) or symptom(s) has continued over time. The precise meaning will depend on the specific immune system disorder, the usual course of the disorder, and the other circumstances of your clinical course." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00C9.

major peripheral joints[4] resulting in either the inability to ambulate[5] effectively, or the inability to perform fine and gross movements effectively.[6]  The ALJ discussed evidence, originating from the examination notes of several treating doctors, that indicated that Claimant had a normal range of motion in all major joints, which allowed him to assume daily activities with only mild limitations.  (*See* ECF No. 9-5 at 20–21.)  The ALJ cited no evidence from the record suggesting that Claimant had any major peripheral joint deformity.  "Claimant's medical imaging was normal; his posture was normal; his hips and ankles were normal; and in March 2013, Claimant's rheumatologist, Dr. Howard, found only minimal arthritic findings with normal strength, sensation, and reflex."  (ECF No. 16 at 42 (citing ECF No. 9-5 at 20–21).)  "The Claimant had no problems extending, making a fist, or opposing his fingers, and grip strength with fine manipulation was normal."  (ECF No. 9-5 at 20–21.)  Without evidence to the contrary, the ALJ is justified in finding a lack of persistent inflammation or deformity in any joints to limit Claimant's ability to ambulate or perform fine movements effectively.  Therefore, substantial evidence exists to find that Claimant did not meet the criteria set forth in subsection A of Listing 14.09.

Additionally, Claimant could not show inflammation or deformity in one or more major peripheral joints with at least moderate involvement of two or more organs/body systems and at

---

[4] "Major peripheral joints" in this section refers to "the hip, knee, shoulder, elbow, wrist-hand, and ankle-foot, as opposed to other peripheral joints (e.g., the joints of the hand or forefoot) or axial joints (i.e., the joints of the spine.)." (ECF No. 16 at 41–42 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00F).)

[5] The "inability to ambulate" means "an extreme limitation of the ability to walk . . . that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities . . . [and includes] having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  (ECF No. 16 at 42 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b).)

[6] The "inability to perform fine and gross movements effectively" means "an extreme loss of function of both upper extremities . . . that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  (ECF No. 16 at 42 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2c).)

least two constitutional signs or symptoms. As discussed in relation to the first set of severity criteria, the ALJ considered evidence supporting his finding that Claimant was not able to show major problems in any of his peripheral joints. Further, no organs or body systems were "involved to at least a moderate level of severity." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09B1. Magistrate Judge Eifert observed the following: "The ALJ examined Claimant's pulmonary, musculoskeletal, endocrine, and cardiac function [with regard to his obesity], but did not identify any significant constitutional signs or symptoms, organ involvement, or impairment of a body system." (ECF No. 16 at 43. *See also* ECF No. 9-5 at 17–18, 20–22.) The ALJ's decision provides evidence that Claimant "did not have Parkinson's disease," did not have obesity-related impairments, had no symptoms suggesting lupus, and had a "normal" musculoskeletal examination in February 2014. (*See* ECF No. 9-5 at 17, 21.) The ALJ noted that "[g]iven Claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor." (*Id.* at 21.) The ALJ cited evidence showing that Claimant "stopped working due to a business-related layoff rather than because of the allegedly disabling impairments." (*Id.* at 22 (citing Claimant's disability report from May 13, 2012).) Claimant does not claim in his objection to Magistrate Judge Eifert's PF&R that any constitutional signs or symptoms or other impairment related to a body system existed that would support a contrary decision as to Listing 14.09B. (*See* ECF No. 17.) Despite Claimant's and his father's testimony, both of which the ALJ found to be inconsistent with the medical record, (*see* ECF No. 9-5 at 22), Claimant did not meet his burden of providing to the ALJ evidence suggesting signs and symptoms of a persistent systemic illness or a significant constitutional impairment, or involvement of two or more body systems or organs. (*See id.* at 21–

11

22.) *See also Hall*, 658 F.2d at 264; 20 C.F.R. §§ 404.953(a), 416.1453(a) (providing that the ALJ must base his or her decision upon "evidence offered at the hearing or otherwise included in the record"). Therefore, substantial evidence exists within the ALJ's decision to find that Claimant did not meet the criteria set forth in subsection B of Listing 14.09.

Third, Claimant did not provide evidence that he suffered from ankylosing spondylitis or other spondyloarthropathy. Listing 14.09C1 and C2 require a showing by "appropriate medically acceptable imaging" [7] that a claimant suffers from ankylosing spondylitis or other spondyloarthropathy. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09C. The only evidence related to Claimant's vertebral column are lumbar spine x-rays, which the ALJ describes as "normal" in step four of his decision's analysis. (*See* ECF No. 9-5 at 20.) Claimant does not claim to have been diagnosed with ankylosing spondylitis or suffer from any other joint disease of the spine. (*See generally id.*; ECF No. 17.) Claimant did not meet his burden to demonstrate that he met this subsection of the listing. *See Odoms*, 2016 WL 3679293, at *4 (citations omitted). As such, substantial evidence exists to find that Claimant did not meet the criteria in subsection C of Listing 14.09.

Lastly, there is substantial evidence in ALJ's decision that Claimant did not suffer from repeated manifestations of inflammatory arthritis with two or more constitutional symptoms or signs and a marked[8] limitation in at least one of the three functional categories used to evaluate the severity of mental impairments. The Court already established in the discussion of subsection

---

[7] "Appropriate medically acceptable imaging" includes "angiography, x-ray imaging, computerized axial tomography (CAT scan) or magnetic resonance imaging (MRI), with or without contrast material, myelography, and radionuclear bone scans." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00C1.
[8] "When 'marked' is used as a standard for measuring the degree of functional limitation, it means more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00I5.

B of Listing 14.09 that substantial evidence exists to find that Claimant did not experience the requisite constitutional symptoms or signs of fever, fatigue, malaise, and weight loss. Further, the ALJ discusses each of the three functional categories related to mental impairments. A consultative examination of Claimant revealed that "all areas of the mental status examination were normal," and the ALJ notes that "[t]his is supported by the evidence of record noting normal mental status." (ECF No. 9-5 at 17 (citations omitted).) The ALJ therefore found that Claimant had a mild limitation in activities of daily living, no limitation in the area of social functioning, and mild limitation in the area of concentration, persistence, or pace. (*See id.* at 18.) No functional limitation was labeled more severe than mild, so none of them can be considered "marked." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00I5. Consequently, substantial evidence exists that Claimant did not meet the criteria in Listing 14.09D.

Both Claimant and Magistrate Judge Eifert note that the ALJ's justification for the step three finding was inadequate solely based on the language in that part of the analysis. (*See* ECF No. 16 at 37; ECF No. 17 at 2.) However, when reviewing the decision as a whole, the ALJ sufficiently described why the requirements of Listing 14.09, set out above, were not met. Therefore, this Court is not forced to engage in its own fact-finding excursion. *See Radford*, 734 F.3d at 296 (citation omitted). This Court finds no argument or evidence provided by Claimant suggesting that he believes he meets the requirements of Listing 14.09 or evidence contradicting the ALJ's conclusion in step three of his analysis. (*See* ECF No. 17.) The burden is on him both to prove a disability, *see* 42 U.S.C. § 423(d)(5); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972), and demonstrate that he meets all the requirements of a particular listing. *See Hall*, 658 F.2d at 264; *Hancock*, 667 F.3d at 476. The ALJ's decision cannot be held to be procedurally

13

defective solely because the explanation is not within the same section as the finding. For remand to be appropriate, the ALJ must not provide sufficient explanation anywhere in the opinion to support the step three finding. Here, steps two and four of the analysis contain adequate discussion to support the finding in step three. This is consistent with the Fourth Circuit's requirements in *McCartney*, *Radford*, and *Fox*. Thus, Magistrate Judge Eifert did not err in concluding that "the ALJ provided a sufficient explanation of his rationale for concluding that Claimant's psoriatic arthritis did not meet the severity criteria of Listing 14.09, and his conclusion was supported by substantial evidence." (ECF No. 16 at 45.) Despite Claimant's objection, there is nothing before the Court that requires a deviation from the findings of Magistrate Judge Eifert in her PF&R.

Accordingly, the Court **ADOPTS** the PF&R, (ECF No. 16), **DENIES** Claimant's request for judgment on the pleadings, (ECF No. 11), and **GRANTS** the Commissioner's request to affirm her decision, (ECF No. 14). Further, the Court **AFFIRMS** the final decision of the Commissioner, **DISMISSES** the Complaint, (ECF No. 2), and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 17, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE